[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
1. FACTS
Jordan G is the child of Fallon G and Christopher S a/k/a Christopher T. On February 5, 1999 the Superior Court for Juvenile Matters at Danbury granted an Order of Temporary Custody, which order was upheld in a hearing which took place on February 11, 1999. On November 16, 1999 Jordan G was committed to the Department of Children and Families as a neglected child. On February 8, 2000 the Department of Children and Families filed a petition to terminate the parental rights of both parents. On June 14, 2000 a trial was conducted on the Department's Petition. Fallon G failed to appear at trial and a default was entered against her. Her attorney indicated for the record that Ms. G was in agreement with the petition, and that it was in Jordan's best interest to be eligible for adoption. CT Page 7303
Mr. S did appear at trial and contested the petition. He is currently in prison, and hopes to be released in either September, 2000, or by September of 2001. Jordan has been in Foster Care since February, 1999. Jordan came into foster care due to his mother placing him in danger by caring for him while using cocaine. She was provided with substance abuse treatment, but could not stop her drug usage. At the time of commitment Fallon G was offered the opportunity to rehabilitate. It was agreed that if she took a hair test and tested negative to drugs she would be able to begin visitation with her son. Nevertheless, she failed to attend three day screen appointments despite the requests of her DCF worker and guardian ad litem. It has been approximately one year since Fallon G visited with her son.
Mr. S has not shown an interest in his son's life. He has not visited with his son since February, 1999. He was incarcerated in September, 1999. He has not attempted to call his son. He has neither sent any cards nor any birthday presents. He has not contacted DCF to inquire as to his son's well being. Jordan G was born on 12/4/98. He appears to be of at least normal cognitive ability. He is highly socialized, but discriminates clearly between his foster family and other adults with whom he interacts.
3. LAW
 4. There clear and convincing evidence that DCF has made reasonable efforts to locate the parents.
 Both parents were parties to the proceedings and were represented by counsel. Although the mother was not present at the trial, her desire that the petition be granted was expressed through her attorney.
 B. There is clear and convincing evidence that DCF has made reasonable efforts to reunify the child with the parents.
 Fallon G has been permitted, since commitment, to obtain additional substance abuse evaluation, substance treatment, and additional opportunities to visit with her son. She has refused all scheduled substance abuse evaluations.
 In order to locate Mr. S DCF contacted the CT Page 7304 Probation Department, requested the State's Attorney to attempt to obtain a current address for him, contacted the law firm representing Mr. S, checked with SNET both in Danbury. and in Torrington, and contacted the Department of Corrections. It was later determined that he could not be found because he had assumed an alias of Christopher T. Mr. S has not contacted the Department regarding his son. DCF is not required to do everything possible, but rather is required to do everything reasonable to reunify the child with the parents. In re Eden F, 48 Conn. App. 290, 312, cert. Granted 245 Conn. 917 (1998). The court finds that DCF's efforts were reasonable in this instance and DCF certainly did not make reunification an impossibility.
 C. There is clear and convincing evidence that for at least one year one of the following existed:
 (1.) Abandonment The child has been abandoned by his father in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. Mr. S has not seen his son since February, 1999. He has not called. He has not inquired of DCF as to his child's well being. He has not sent cards or birthday gifts. Incarceration does not, in itself constitute abandonment. However, a parent's failure to utilize available opportunities to maintain contact with a child will not be excused based solely on the restrictive nature of incarceration. In re Juvenile Appeal 187 Conn. 431, 443 (1982). See also In re Shane P. 58 CA 244 (2000). It is noteworthy that Mr. S was not incarcerated between February and September 1999, yet he still failed to maintain contact with his son. Further, he has failed to make even the slightest effort to maintain contact with his son while he has been in prison.
 (2.) Fallon G has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time she would assume a responsible position in her son's life. CT Page 7305 Fallon G was offered several opportunities to receive treatment for her drug addiction and failed to comply with the requirements of the programs.
 (3.) There is no ongoing relationship between the parents and the child. In view of the fact that neither parent has seen the child for at least a year during the developmental stages of the child's life, there is no ongoing parent/child relationship here that normally develops as a result of a parent having met on a continuing day to day basis the physical emotional, moral or education needs of the child. It would be detrimental to the best, interests of the child to allow further time for the establishment of a parent/child relationship.
 D. Termination is in the best interest of the child by clear and convincing evidence.
1. Timeliness, nature and extent of services
 Since the commitment Ms. G was offered substance abuse evaluation and treatment with the possibility of institution visitation with her son. She refused these substance abuse services and/or failed to complete some of them. Mr. S was offered a substance abuse program through the probation department of which he did not take advantage. The Department offered drug services through MCCA when he was in contact with them. However, he refused to accept these services. He did not contact DCF and failed to attend several court hearings regarding his son.
 2. The Department has made reasonable efforts to reunite the Family pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980. The parents failed to keep contact with their child. They failed to discontinue their involvement with both drugs and the Criminal Justice System.
 3. On February 11, 1999 Christopher S signedCT Page 7306 specific steps as follows which were approved by this court (Resha, J.).
 a. Keep all appointments with DCF — He did not attend treatment plan reviews for his son.
 b. Participate in Anger Management — He failed to do this through DCF.
 c. Substance Abuse Treatment — He failed to do this through DCF or Probation.
 d. Random Drug Testing — He was uncooperative with Probation and failed to attend any evaluation scheduled by DCF.
 e. Follow Recommendations of Service of Providers — Mr. S never attended MCCA
f. Signed Releases — Mr. S never signed releases
 g. Secure and/or maintain adequate housing and legal income — Mr. S is currently incarcerated. There is no record of legal income given to DCF.
 h. No Substance Abuse — Mr. S usage of drugs after April 1999 is unknown.
 i. No further involvement with Criminal Justice System — Mr. S is currently incarcerated facing sentencing on drug charges.
 j. Cooperate with Probation — Mr. S did not cooperate with Probation and was violated by the Probation Department
 3a. Specific Steps were signed by Fallon G on 2/11/99 which were approved by the Court (Resha, J.) Amended steps were signed and approved by the Court on 11/16/99 (Eveleigh, J.)
These steps include: CT Page 7307
 1. Keep all appointments with DCF — Ms. G did not attend 3 scheduled appointments made for her by MCCA for substance abuse evaluation. She met with her DCF worker once. She did not attend an administrative case review held on 12/14/99, but did attend one scheduled on 6/17/99.
 2. Keep whereabouts known to DCF — Ms. G kept DCF informed of her location.
 3. Participate in counseling and successfully complete substance abuse treatment — Ms. G attended the MCCA program, but was unable to remain abstinent. She twice entered Blue Ridge in-patient program.
 She refused a family arranged placement at Waler Hoverning Home in Garripon, N.Y. She left Help, Inc. shortly after entering the program. She was given an opportunity to return to MCCA for drug evaluation and treatment but refused 3 substance abuse evaluations.
 4. Submit to random drug testing — Ms. G refused to go for a hair test on three occasions.
 5. Follow recommendations of service providers — Ms. G did try to follow MCCA and went in-patient on MCCA's advice, but she failed to commit herself to the treatment and was unsuccessful.
6. Sign releases — Ms. G did sign releases.
 7. Secure and maintain adequate housing and legal income — Ms. G's source of income is uncertain. When not incarcerated she stayed with her mother, which was detrimental to her best interest.
8. No substance abuse — she was unable to comply. CT Page 7308
 9. No further involvement with Criminal Justice System — She was incarcerated.
 10. Cooperate with segmented substance abuse test — She failed to comply.
 4. Jordan has no relationship with either parent. He has not seen his father since 2/5/99 and saw his mother three times, most recently on 6/17/99. There is a close bond between Jordan and his foster parents.
5. Jordan G was born on December 4, 1998.
 6. The parents have not made sufficient efforts to adjust their circumstances to make it in the best interest of the child to return him to their care.
 Mr. S has not made an effort to contact his son since February, 1999. He has not inquired of his son's well-being since April 1999. Fallon G has been uncooperative with her substance abuse treatment and has not benefited from the treatment she did receive. She last saw her son approximately one year ago.
 7. Neither parent has been prevented from maintaining a meaningful relationship with Jordan by the unreasonable act or conduct of any person or by economic circumstances.
 Pursuant to C.G.S. Sec. 45a-717 (a)(1) the court finds that Jordan has benefited from the excellent care he has received in his foster home. He has no chronic physical problems, is responsive socially and has met developmental milestones. He is observant and interacts well. There are no concerns about his cognitive abilities. He is a very happy upbeat child. His mother has a severe substance abuse problem, and has been incarcerated. She has been unable to maintain any steady employment. Mr. S has a long criminal history with an involvement in drugs. Both parents have CT Page 7309 abandoned their interests in their son's life.
III. CONCLUSION
Based upon the foregoing the Court finds that the Statutory Grounds for termination exist, and that termination is in the best interest of the child by clear and convincing evidence. Therefore, the Court orders that the parental rights of Fallon G and Christopher S alias Christopher T be terminated and appoints the Commissioner of the Department of Children and Families as Statutory Parent.
By The Court
Eveleigh, J.